### BROWN et ux. v. T. W. PHILLIPS GAS & OIL CO.

### Civ. No. 7910.

United States District Court
W. D. Pennsylvania.
May 22, 1952.

480

Marvin D. Power, of Margiotti & Casey, Pittsburgh, Pa., for plaintiffs.

Willis McCook Miller, of Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., for defendant.

John R. Bredin, of Dalzell, McFall, Pringle & Bredin, Pittsburgh, Pa., for Travelers Fire Ins. Co.

William W. Matson, Pittsburgh, Pa., for Piedmont Fire Ins. Co. and Franklin Fire Ins. Co.

MARSH, District Judge.

The plaintiffs, Richard C. Brown and Edith P. Brown, his wife, were the owners of certain poultry and poultry houses situated in East Mahoning Township, Indiana County, Pennsylvania, which were destroyed by fire on June 22, 1947. Under policies of fire insurance entered into between the plaintiffs and certain insurance carriers the plaintiffs received the following amounts:

| | |
|---|---|
| Travelers Fire Insurance Company | $ 3,854.41 |
| Franklin Fire Insurance Company | 3,854.41 |
| Piedmont Fire Insurance Company | 3,853.41 |
| Total | $11,562.23 |

Plaintiffs claimed that T. W. Phillips Gas & Oil Company was a tort-feasor and liable for the fire loss and, as a result of an action in this court, recovered a verdict of $38,000, later reduced to $32,000 by the trial judge.[1] The plaintiffs pursued their action against the tort-feasor in good faith. It is alleged that they entered into a contingent fee contract with their attorneys to pay to them 40% of the amount recovered.

On December 4, 1950, on motion of the insurance carriers above named, a rule was issued upon the plaintiffs and the defendant to show cause why these insurance carriers should not be subrogated to the extent of the amounts paid by them to plaintiffs under the policies of insurance.[2] The plaintiffs do not contest the fact that the insurance carriers are entitled to enforce their subrogation rights.

The issue before the court is whether in the enforcement of their subrogation rights the insurance carriers are entitled to recover the full amounts paid by them to the plaintiffs or whether they should be required to contribute a proportionate share of plaintiffs' expenses incurred in the litigation against the tort-feasor.

Counsel for the plaintiffs contends that it is manifestly unfair for his clients to pay

---

1. The judgment was affirmed in Brown v. T. W. Phillips Gas & Oil Company, 3 Cir., 1952, 195 F.2d 643 on April 7, 1952.

2. After hearing it appeared that a motion for a new trial was pending whereupon the papers were returned to the Clerk's office to await final disposition. On April 15, 1952, on stipulation between counsel, the motions for subrogation were renewed.

a contingent fee on $32,000 plus interest, when of this amount $11,562.23 has been recovered for the benefit of the three insurance carriers. He further contends that each insurance carrier should be required to pay 40 percent of the amount to which each is entitled, and also a proportionate share of the expenses.

The contention of counsel for the insurance carriers is that they are entitled to recover the full amount paid under their respective policies without deduction for fees or costs. To sustain their contention they have cited, inter alia, the cases of Ellis v. Atlantic Refining Co., 1932, 309 Pa. 287, 163 A. 531; Kratsas v. Guest, 1950, 166 Pa.Super. 233, 70 A.2d 672. These decisions are not apposite to this case for the reason that they involve interpretations of Section 319 of the Pennsylvania Workmen's Compensation Act.[3,4] In our opinion the other cases cited by petitioners do not directly adjudicate the question under consideration.

█ In absence of a statute such as the former Pennsylvania Workmen's Compensation Act, or a contract by insured[5] assigning a definite amount to the insurer, we think equitable principles should govern in enforcing the rights of subrogation of the insurance carriers against the fund recovered by the insured from the tort-feasor. In 46 C.J.S., Insurance, § 1215(a), it is stated: "Where an action against the third person is prosecuted in good faith by insured for the benefit either wholly or in part of insurer, the latter may be required to contribute to the payment of the expenses of prosecuting the action by which a judgment was obtained for its benefit."[6]

There is a paucity of authority upon the issue involved in the instant case.[7] It is our opinion that in a situation where fire insurance carriers attempt to recoup by way of subrogation the amounts which they have paid, it is appropriate to follow the principles of equity applied in class actions and decedents' estates, where those who benefit from the action of a stockholder or of a single beneficiary must contribute to his compensation and expenses.[8]

The Supreme Court of the United States in Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 166-167, 59 S.Ct. 777, 780, 83 L.Ed. 1184 stated that "Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation. * * * As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as

---

3. Ellis case: § 319 of the Act of June 2, 1915, P.L. 736; Kratsas case: § 319 as amended by Act of May 18, 1945, P.L. 671.

4. It is interesting to note that § 319 of the Pennsylvania Workmen's Compensation Act as last amended by Act No. 125, approved May 29, 1951, 77 Pa.P.S. § 671, now provides that reasonable attorney's fees and other disbursements shall be pro-rated. See also Conrad v. Aero-Mayflower Transit Co., 1943, 152 Pa. Super. 477, 33 A.2d 91, decided under § 319 amended by Act June 4, 1937, P.L. 1552, page 1575.

5. Under the standard fire insurance policies required in Pennsylvania (see 40 Pa. P.S. § 657), the insurance carrier "may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company." Such an assignment of the *right to sue* was in fact made to the Piedmont Fire Insurance Company. Piedmont did not exercise its assigned right of recovery against the tort-feasor but seeks reimbursement under its equitable right of subrogation as do the other petitioners. See 46 C.J. S., Insurance, § 1209, page 158 "Assignment of claim against third person."

6. The obiter dicta in the case of Cary v. Phoenix Insurance Co., 1910, 83 Conn. 690, 78 A. 426 is cited as authority for this proposition.

7. In fire loss cases, where the insured has recovered from the tort-feasor, his counsel fees and expenses incurred in such litigation have been taken into account and held to be a part of his loss in passing upon the subrogation rights of the fire insurance carriers. See Washtenaw Mutual Fire Ins. Co. v. Budd, 208 Mich. 483, 175 N.W. 231 and Shawnee Fire Ins. Co. v. Cosgrove, 85 Kan. 296, 116 P. 819, 41 L.R.A.,N.S., 719; rehearing in 86 Kan. 374, 121 P. 488.

8. See 8 Cyclopedia of Federal Procedure, § 3638, and cases cited therein.

a living system and save it from sterility." In the Sprague case the Supreme Court reversed the District Court and stated that it had the power to determine whether counsel fees and costs should be awarded to the plaintiff, who had established her right to certain bonds deposited in the bank. The decision in favor of the plaintiff by reason of the doctrine of *stare decisis* benefited fourteen other persons similarly situated. In subsequent proceedings counsel fees and expenses of litigation were allowed to plaintiff.[9]

In the case of Davis v. Gemmell, 1891, 73 Md. 530, 21 A. 712, 715, attorneys were employed by a stockholder who sued in his own name and recovered a judgment which was determined to belong to the North Branch Coal Company. Some of the stockholders objected to the allowance of the contingent fee to the attorneys, but the Court of Appeals of Maryland stated "[they] stood by and saw the work done; they neither interfered nor objected; and they cannot now be heard in a court of equity to except to that work being paid for out of the fund realized by the labor of these gentlemen, especially when they themselves, these exceptants, are seeking to reap the benefit of that very work and labor."

The Supreme Court of Pennsylvania in In re Hannach's Estate, 1938, 332 Pa. 145, 2 A.2d 711, 714, after affirming a decree of the lower court, stated: "The other beneficiaries permitted the burden of defending the decree made by the court below to rest upon the guardian ad litem. In affirming this decree, the record is remitted to the court below with directions that it charge against the distributable share of the benefited income legatees the costs incurred and make such an allowance for additional fees to the guardian ad litem as is commensurate with the services rendered to the seven other benefited income legatees as well as to the guardian's ward."

It is, therefore, the opinion of this court that the insurance carriers should pay a proportionate share of the fees of the plaintiffs' attorneys, and contribute pro-portionately to the expenses of the litigation. We feel, however, that the contingent fee contract which exists between plaintiffs and their counsel is not binding upon the insurance carriers. Counsel for the plaintiffs are entitled to fair and reasonable compensation for their work and this compensation should be paid by each of the insurance carriers in proportion to the sum recovered by each company by way of subrogation in this proceeding. If the parties are unable to agree upon compensation for counsel for the plaintiffs, it will be necessary for the court to take testimony and determine what constitutes fair and reasonable compensation for plaintiffs' counsel. Each insurance carrier should also be required to contribute proportionately to the amount necessarily expended by plaintiffs or their counsel in preparing for trial and sustaining the judgment in their favor. In this manner the insurance carriers, here invoking the powers of a court in equity, will be required to do equity.

The parties small submit an order in conformity with this opinion within twenty days. If they cannot agree, a hearing will be held.

---

9.  Sprague v. Ticonic Nat. Bank, 1 Cir., 1940, 110 F.2d 174.