Long *v.* Marino Masse, Inc. et al., Appellants.

Argued March 18, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Raymond J. Porreca,* for appellants.

*R. Lawrence Clay,* for appellee.

OPINION BY WATKINS, J., April 15, 1965:

This is an appeal from an order of the Court of Common Pleas No. 4 of Philadelphia County, dismissing an appeal from an award made by the Workmen's Compensation Board. The Referee awarded benefits: the Board affirmed. The court below, on appeal, remanded the case to the Workmen's Compensation Board to determine whether the claimant was an employee or an independent contractor. The Board reconsidered and said, "the evidence disclosed an employer-employee relationship in which the claimant-employee was ordered by his employer to perform various labor duties in addition to the truck-driving." The Board, then found as a fact: "That at the time of the accident, claimant was employed by defendant as a truck driver and general laborer, and pursuant to this employment, while assisting another employee in filling in holes in a street and barricading the same, claimant was struck down by a passing motorist." There was a conclusion

of law that the relationship of employer and employee existed and that at the time of his injury he was furthering the interest of his employer.

The claimant, Edward Long, age 43, on November 6, 1959, was employed together with one, Willie Mitchell, in filling in a hole on the shoulder of Knights Road in Philadelphia, Pennsylvania, when they were both struck by a passing motorist and seriously injured. He was employed under an oral agreement with Marino Masse, head of the defendant corporation, Marino Masse, Inc., whereby he was paid $2.25 per hour for labor and $0.75 per hour for furnishing his truck during his hours of employment. He worked full time.

On the day of the accident he drove his truck to the office, and as usual, was told where to go and what to do. In this case he was told to go to Carter Road, Byberry. He was then told by the foreman to "shovel up the mud in the street". Immediately after lunch the foreman directed the claimant and his fellow employee Mitchell to go to Knights Road and directed them to take some necessary equipment. They arrived at the place, unloaded the equipment, secured cement, set up blinking lights and began shoveling cement into one of the holes. As they were covering the holes so filled the accident occurred.

The appellants contend that the claimant was an independent contractor supplying his truck to the job. The court below on the first appeal remanded it to the Board to determine clear facts in regard to the employment.

The burden of proof was on the employee to establish the relationship but, we have held, "neither the compensation authorities nor the courts should be solicitous to put claimants in that position when a reasonable view of the evidence warrants a finding that the injured person was an employee." *Gadd v. Barone,* 167 Pa. Superior Ct. 477, 75 A. 2d 620 (1950) ; *Thomas v.*

*Bache,* 351 Pa. 220, 40 A. 2d 495 (1945) ; 42 P.L.E. §304.

We agree with the court below that: "The law is clear that our function in reviewing the action of the Board is narrowly confined to a determination of whether or not there is sufficient legally competent evidence to support the findings of fact made by the Board, and whether or not the law has been properly applied thereto. Plentnick v. Philadelphia & Reading Coal & Iron Co., 299 Pa. 493; . . .". A careful examination of this record discloses that there is competent evidence to support the findings of the Board and that a reasonable view of the facts so found declare the legal effect to be that the relationship of employer and employee exists and the claimant has sustained his burden of proof.

The only other question raised in this appeal is whether the award of compensation as made by the Board properly disposed of the subrogation of the fund received by the claimant from the third-party tortfeasor; and it is also contended that the counsel fee was unreasonable and exorbitant.

At the outset, under all the circumstances in this case, an excellent result for both claimant and appellants was achieved in the eighteen thousand dollar recovery. We are in agreement with the Board and the court below that six thousand ($6000) dollars was a reasonable counsel fee. *Mazzeo v. M. & J. B. McHugh,* 199 Pa. Superior Ct. 400, 185 A. 2d 638 (1962).

The method by which the amount of present and future payments are computed is well described by John T. Welsh, former chairman of the Workmen's Compensation Board, as follows: "Under the Act of January 2, 1952, P. L. 1803, a totally disabled employee was entitled to 700 weeks of compensation at the rate of not more than $30.00 per week nor less than $20.00 but not to exceed $20,000. The Act that applies to this claim-

ant now provides for $37.50 per week for an indefinite period. If we took the medium of 700 weeks, the claimant would be entitled to $26,250 minimum. There is no foretelling how much this claimant might recover, but one might estimate in the neighborhood of $30,000. Of this the third-party obligated itself to $18,000. Claimant sought the legal determination in order to realize the amount, all of which inures to the benefit of the defendant and not necessarily to the claimant. . . ."

We have held that under the subrogation section of the Act of 1951, May 29, P. L. 507, 77 P. S. §671, that ". . . the logical conclusion is inescapable that the legislature intended that the employer be required to share the burden of attorney's fees on the basis of its total benefit from the third-party recovery, that is, the total amount which the carrier would have been called upon to pay. The argument that it is impossible to determine just what the total savings will be where future payments are concerned is answered by the Act which allows for modification in payments or suspension if certain contingencies arise." *Soliday v. Hires Turner Glass Co.*, 187 Pa. Superior Ct. 44, 51, 142 A. 2d 425 (1958) ; 42 P.L.E. §496.

The subrogation section of the Act was again amended by the Act of December 28, 1959, P. L. 2034, §4, 77 P.S. §671. Whether this amendment changed the interpretation of this section by the *Soliday* case, supra, was discussed by this Court in *Wall v. Conn Weld. & Mach. Co.*, 197 Pa. Superior Ct. 360, 179 A. 2d 235 (1962), and we held that it did not and that "compensation payable" as used in the Act has a distinct meaning as words of art and the amount established in an award or agreement included the total obligation whether accrued or payable in the future.

However, there is an apparent error in the Board's order dated April 11, 1962. The order provides that

the defendant shall pay the attorney's fee of $6000, two thousand dollars from accrued compensation and the balance in installments, and other expenses of $1830.19. The Board then proceeded to deduct the full amount of $7830.19 from the eighteen thousand dollar fund and then credited the defendant with $10,169.81.

The claimant is entitled to an estimated $30,000 in compensation payments. He is also entitled to have his medical expenses and attorney's fee paid by the defendant. This amounts to a total obligation of $37,830.19. The claimant, upon settlement with the third-party joint tortfeasor, and after deduction of $7830.19 for his counsel fees and medical expenses, had net $10,169.81, so that at that time the only credit that the employer was entitled to was that sum. However, when the employer recompenses him to the extent of the costs of raising the fund, under the Board's order, he will have net from the settlement eighteen thousand ($18,000) dollars and the employer is entitled to that sum as credit for compensation payments. Compensation payments will be suspended until the credit of eighteen thousand ($18,000) dollars is realized by the employer but he must continue to make the installment payments on account of the attorney's fee until the claimant is repaid the four thousand ($4000) dollars balance due.

The theory of subrogation is that the employer is entitled to credit in compensation payments for the fund created by the third-party suit but must pay, in this case, the full amount of the costs of creating that fund. The fund amounted to $18,000; the employer is being directed to pay expenses of $1830.19, $2000 on account of attorney's fees forthwith and the balance to be paid in installments. This was done to protect the defendants in the event of modification, suspension or termination. The entire fee would not be paid only in the event of the death or recovery of the claimant, in which event the fee would be apportioned. In any

event, the costs of raising the subrogated fund must be paid by the defendants. As the order directs payment of the $7,830.19, the cost of raising the fund, the failure to give credit for the total recovery of $18,000 as an advanced payment of compensation would result in the defendants paying these items twice, in cash and by loss of credit.

We are not deciding who is at fault in the delay attending this case but it is most certainly subject to severe criticism. It should be noted that compensation became payable as of November 13, 1959, so that as of now, counsel fees at the rate of $12.50 per week have already accrued to pay the entire amount of the four thousand dollar balance and over $12,000 has accrued in compensation credits and liability is just now being determined.

The defendants are entitled to be subrogated to the full extent of its liability. *Bumbarger v. Bumbarger,* 190 Pa. Superior Ct. 571, 155 A. 2d 216 (1959). The employer is given not only a right of subrogation but is subrogated to the extent of compensation paid. *Smith v. Yellow Cab Co.,* 288 Pa. 85, 89, 135 A. 858 (1927). "Subrogation is an equitable doctrine and its basis is the doing of complete, essential and perfect justice between all parties without regard to form." *Furia v. Philadelphia,* 180 Pa. Superior Ct. 50, 54, 118 A. 2d 236 (1955). See also: *Meehan v. Philadelphia,* 184 Pa. Superior Ct. 659, 665, 136 A. 2d 178 (1957).

There is no complaint about the method the Board used in providing for payment of the attorney's fee nor is there any complaint about the installment system set up for this payment. The defendants complain about the amount of the credit and the fact that the order did not contain the usual direction for payment of compensation. These complaints of the defendants are sustained and the order of the Board, reading as follows, is vacated.

"It is hereby ordered and directed that the defendant pay to the claimant its proportionate share of the attorney's fee of $6,000.00 paid by the claimant in producing the fund of $10,169.81 credited to the defendant as an advance payment of compensation, therefore, from the total amount of compensation accrued to date one-third thereof shall be paid by the defendant to the claimant forthwith and from all future compensation the defendant shall pay to the claimant one-third thereof at bi-weekly intervals subject to any rights due to modification, suspension or termination.

"It is hereby ordered and directed that the defendant, and/or its insurance carrier, pay to the Nazareth Hospital, in-patient treatment, $1,259.19; to Nazareth Hospital, for clinic visits, $78.00; for orthopedic appliances, $43.00, and for surgical and medical expenses incurred, a total sum of $450." And we substitute the following order:

It is hereby ordered and directed that the defendant, Marino Masse, Inc., and/or the defendant insurance carrier, Amsterdam Casualty Co., pay to the claimant, Edward Long, compensation at the rate of $37.50 per week from November 13, 1959, to continue until such time as the claimant's disability shall cease or change in extent within the provisions of the Pennsylvania Workmen's Compensation Law. And it is further ordered and directed that the fund of $18,000 be credited to the defendant as an advance payment of compensation.

It is hereby ordered and directed that the defendant and/or defendant insurance carrier pay to the Blue Cross and Blue Shield, in-patient treatment $1,259.19; to Edward Long, for clinic visits $78.00; for orthopedic appliances $43.00, and for surgical and medical expenses incurred; to Blue Cross and Blue Shield $275,-

00, and to Edward Long $175.00, or a total of $1380.19.[1]

And it is hereby ordered and directed that the defendant pay to the claimant the attorney's fee of $6000 paid by the claimant in producing the fund of $18,000 and that one-third thereof or two thousand ($2000) dollars shall be paid by the defendant to the claimant forthwith and that the defendant shall pay from all future compensation one-third thereof at bi-weekly intervals or $25 until the balance of four thousand ($4000) dollars is paid, subject to any rights due to modification, suspension or termination.

The order of the court below dismissing the exceptions filed by the employer and its insurance carrier to the award of compensation is affirmed as modified.

---

[1] A joint stipulation by counsel amended the record in regard to the payment of medical, surgical and hospital expenses.